**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jodi Moshier, et al., | No. CV-23-00225-PHX-DLR |
| Plaintiffs, | Consolidated with:<br>Case No. CV-23-00822-PHX-DLR |
| v. | **ORDER** |
| Safeco Insurance Company of America, | |
| Defendant. | |

Before the Court is Plaintiffs' Motion to Compel (Doc. 46), which is fully briefed (Docs. 49, 51). For reasons below, the motion is granted.

**I.      Background**

Plaintiffs allege that Defendant Safeco Insurance Company of America ("Safeco") failed in the past to stack Uninsured Motorist Coverage ("UM") and Underinsured Motorist Coverage ("UIM") limits as required by Arizona's Uninsured Motorist Act. Plaintiffs claim that the insurance benefits paid by Safeco to every member of the putative class were wrongfully capped at the maximum amount of the single-vehicle UM/UIM benefits.

Plaintiffs have employed experts to model damages. Plaintiffs' experts need a limited sample of data regarding Safeco's past UM/UIM settlement payments along with third-party bodily injury settlement payments to demonstrate how such damages can be modeled on a class-wide basis. At issue are Plaintiffs' Requests for Production ("RFP") Nos. 40, 41, and 43, in which Plaintiffs request that Safeco produce all data reflecting the amounts of all private passenger automobile and motorcycle (1) UM/UIM claim

settlements paid by Safeco for the past six years (RFP 40), (2) liability insurance claim settlements paid to third parties by Safeco for the past six years (RFP 41), and (3) liability claim settlements for the past six years (RFP 43). In their motion to compel, Plaintiffs state that "[t]o limit the burdens associated with gathering and producing such data, Plaintiffs would accept a limited sample of the data at the class certification stage (approximately 200 rows of data per coverage type)." (Doc. 46 at 10.) Plaintiffs argue that the data is relevant and necessary for the presentation of their damages model and that it can be produced by Safeco with minimal effort.

Safeco objects to producing data about the settlement payments primarily on relevance grounds. Safeco argues that the data Plaintiffs seek could not show that Safeco breached its contract with any putative class member or improperly handled any putative class member's claim because the data sought is not data about any putative class members' claims. Safeco argues that each putative class member must prove the damages they would have been legally entitled to recover under the policy and then prove that Safeco underpaid their UM or UIM benefits. Relying on *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011), Safeco argues that Plaintiffs cannot try the case "by formula" by using other people's injuries to prove liability or damages and that the use of models prepared by experts based on past settlements would deny Safeco the opportunity to challenge the reasonableness of the link of the claimed damages. Citing *Tyson Foods, Inc. v. Bouaphakeo,* 577 U.S. 442 (2016), Safeco further argues that this is not an appropriate case for the use of representative evidence to prove damages.

Even if the Court determines that non-claimant specific data is relevant to a claimant's claim, Safeco argues the motion should be denied because the data sought is not representative of any plaintiff's claim or any putative member's injury. Safeco points out that personal settlements do not define the amount of a claimant's legally recoverable injury because evaluating personal injury claims is not an exact science.

Safeco also argues that the liability settlement data is not relevant because it involves fundamentally different types of claims than UM and UIM claims. UM and UIM

1  claims are first-party claims while liability claims are third-party claims.

2        Finally, Safeco argues that Plaintiffs are not required to prove their case through
3  common proof at the class certification stage.

4        Aside from relevance, Safeco argues that it should not be required to produce the
5  data because such production would impose an undue burden and Safeco has an obligation
6  under Arizona law to keep the requested information confidential.

7      **II.**    **Analysis**

8        **A. Relevance**

9        Information is relevant if it has "'any tendency' to make a fact in dispute 'more or
10 less probable'." *Cont'l Cirs. LLC. v. Intel Corp.,* 435 F. Supp. 3d 1014, 1018 (D. Ariz.
11 2020) (quoting Fed. R. Civ. P. 401). At the pre-class-certification stage, requested
12 information that "is likely to produce substantiation of the class allegations" is relevant.
13 *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). In determining the relevance of
14 pre-class-certification discovery, the Court does *not* decide whether the requirements for
15 class certification are met, the proposed damages model satisfies *Daubert*, Plaintiffs will
16 prevail on the common question presented, or the damages model will be accepted at trial.
17 These questions are reserved for later stages of the litigation.

18       Plaintiffs' data discovery request is geared toward proof of damages. (Doc. 46 at 7.)
19 Safeco's relevance objections are premised on the assumption that Plaintiffs' method of
20 proving class-wide damages must calculate damages for each individual class member—
21 the "common proof of individual damages" approach. Safeco argues that there is no precise
22 method of calculating personal injury damages, that each class member's injuries are
23 separate and individualized, and the amounts it paid to settle other unrelated claims cannot
24 be used to prove what Safeco owes these Plaintiffs. Plaintiffs, however, intend to show that
25 they have a model that can determine aggregate damages through the representative
26 approach. Rather than totaling individualized damages of each class member, Plaintiffs
27 claim that their experts have created a model to calculate class-wide damages in the
28 aggregate.

There is no general prohibition against proving class-wide damages through the representative approach, where statistical evidence is used to prove class claims. "The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197 (1st Cir. 2009). Plaintiffs concede that there are individual variations in damages among class members and that there are some uninjured class members. But individualized damages do not necessarily destroy predominance, *see Olean Wholesale Grocery Corp., Inc. v. Bumble Bee Foods LLC,* 31 F. 4th 651, 669 (9th Cir. 2022) (en banc), and at the class certification stage, Plaintiffs' calculations need not be exact, *Comcast Corp. v. Behrend,* 569 U.S. 27, 35 (2013). Plaintiffs claim that their model can reasonably account for Safeco's monetary liability. In its response to Plaintiffs' eventual motion for class certification, Safeco may of course produce its own model that individually tallies damages. And after Plaintiffs present their model, the Court will need to decide if Plaintiffs' aggregate damages model establishes that damages are capable of measurement on a class-wide basis. *Comcast,* 569 U.S. at 34. At that time, the Court will take a close look at whether the presence of individualized damages questions undermine predominance. *Id.* But the question the Court must answer today is merely whether the data Plaintiffs seek is likely to produce substantiation of the class allegations.

Plaintiffs represent that their experts need Safeco's data concerning its settlement of past bodily injury and UM/UIM claims to calculate class-wide damages using the representative approach. Plaintiffs represent that their expert's model will use the distribution of past settlement payments that were not reduced by any cap to estimate the distribution curve for all the class members' claims and calculate the probable aggregate of settlements that would have been made to the class under what Plaintiffs claim are the correct stacked policy limits. With that data, Plaintiffs' experts can utilize established statistical tools such as Kaplan-Meier curves and Weibull mixture models and attempt to show that the aggregate damages can be calculated for all insureds whose benefits were limited by caps.

Plaintiffs further have distinguished the two primary cases relied on by Safeco in its objection to the use of statistical evidence to prove damages. *Tyson Foods* did not establish a categorical rule against statistical or other representative evidence to prove class claims. Plaintiffs' use of statistical evidence is being employed here to establish a measure of damages, whereas in *Tyson*, the statistical evidence was employed to prove a breach of liability and causation. *Tyson* made clear that "[w]hether and when statistical evidence . . . can be used to establish classwide liability depends on the purpose for which the evidence is being introduced[.]" 577 U.S. at 1040. Representative proof of aggregate damages is a well-accepted method of showing predominance. *Tyson* did not change that. And in *Dukes*, the plaintiffs sought to certify an injunction class pursuant to Rule 23(b)(2). Damages were not an issue. Plaintiffs, here, have made clear that their use of statistical models goes only to damages. The statistical models involved in *Dukes* addressed liability at the class certification stage, after discovery of data had been obtained. Although *Dukes* did not approve of the statistical models that had been presented regarding liability, it did not prohibit the discovery of the data upon which the models relied.

For these reasons, the Court finds Plaintiffs' requested data relevant.

### B. Burden

Safeco argues that there "is a burden to producing the requested data." (Doc. 49 at 13.) However, Safeco does not describe the burden. Safeco supplies no affidavit from a custodian of records describing the anticipated labor or costs to retrieve the data. As for confidentiality concerns, those can be resolved through a protective order, if appropriate. Safeco has not established an unreasonable or disproportionate burden in producing the data.

**IT IS ORDERED** that Plaintiff's Motion to Compel (Doc. 46) is **GRANTED**.

Dated this 15th day of October, 2024.

_____
Douglas L. Rayes
Senior United States District Judge